IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

OTIS HARVEY                                                                                        PLAINTIFF

VS.                                        CASE NO. 12-CV-1121

GEORGIA-PACIFIC, LLC                                                                    DEFENDANT

**MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment filed by Defendant Georgia-Pacific, LLC ("GP"). ECF No. 16. Plaintiff has filed a response (ECF No. 21), and GP has filed a reply. ECF No. 25. The Court finds this matter ripe for consideration.

BACKGROUND

After having worked for GP's plywood operations plant in Fordyce for over twenty-five years, Plaintiff was hired on December 12, 2011, as a Utility Entry Level (or "Sixth Hand") at the paper operations plant in Crossett.[1] As a Sixth Hand, Plaintiff operated an overhead crane, assisted with the operation of a paper machine called "the winder," and assisted with whatever else needed to be done at the Board Mill.

Plaintiff began his employment under a probationary period of 150 days, and Plaintiff was to be evaluated by Optimizer Wayne Kelley[2] on a weekly basis during the probationary period. Plaintiff received four weeks of on the job training, which was the standard amount of training provided to a Sixth Hand. Plaintiff, however, told Kelley that the training was

---

[1] After GP's Fordyce plywood plant closed, Plaintiff began working for GP's Crossett plywood operations plant. When the plywood plant closed, Plaintiff was awarded a position at the Crossett paper operations plant.

[2] Kelley's responsibilities as an Optimizer included coordination of all activities on the winder from a safety standpoint, quality, and production. Kelley was not a supervisor and did not have the authority to hire, fire, promote, reassign job responsibilities, or change compensation or benefits for employees.

inadequate for two of those weeks, and Kelley arranged for Plaintiff to receive an additional two weeks of training.

    A. *Job Evaluations*

Kelley evaluated Plaintiff, along with other Sixth Hands, from January through April 2012. Kelley evaluated Plaintiff's performance across six general topics, which were subdivided into twenty-four subtopics, by rating his performance as either unacceptable, needs improvement, meets expectations, exceeds expectations, or not applicable. The weekly evaluations also provided detailed comments regarding Plaintiff's job performance related to each topic. For these evaluations, Kelley solicited weekly feedback from Plaintiff's co-workers and shift coordinators and also personally observed Plaintiff's performances. Kelley discussed these evaluations with Plaintiff each week and offered him an opportunity to develop a plan to address any areas in which he needed improvement.

Plaintiff received a rating of needs improvement in at least one category in 12 of the 15 evaluations completed for him during the probationary period.[3] Many times, Plaintiff received needs improvement ratings in multiple categories on a single evaluation. In fact, Plaintiff received a total of 33 needs improvement ratings in twelve different subtopics.[4] Plaintiff's evaluations showed that he consistently needed improvement in contributing to his job without

---

[3] Kelley completed most of the evaluations. In Kelley's absence, Aaron Mowry, Plaintiff's manager, completed one of the evaluations. Andrew Wolfe completed one evaluation because of Kelley's absence. Wolfe, a process engineer, completed the evaluation because he was a salaried employee and evaluations were required to be completed by salaried employees as opposed to hourly employees.

[4] Plaintiff received 33 needs improvement ratings in the following twelve subtopics: understands responsibilities and rarely needs help (10 times); contributes to job without direction from others (8 times); participates as a team member (3 times); accountable for own actions (3 times); understands principles & procedures of operation equipment (2 times); demonstrates a sense of urgency (1 time); interacts well with co-workers (1 time); demonstrates commitment to team success (1 time); shares information willingly (1 time); aware of his strengths and weaknesses (1 time); unexcused absences (1 time); and late starts (1 time).

2

direction and in understanding his job duties without help. Specifically, Plaintiff received a needs improvement rating in one of these two areas in 11 out of 15 subtopics.

### B. Human Resources' Investigation

Plaintiff disagreed with the needs improvement ratings that he received, and Plaintiff either signed his weekly evaluations with disagreement or refused to sign them. Brenda Coffey, Senior Human Resources Manager, became aware of this fact and initiated a meeting with Plaintiff on February 20, 2014. Plaintiff indicated to Coffey that he believed his evaluations were based on inaccurate feedback and unfair criticism from his co-workers and that he was being discriminated against based on his race. Plaintiff did not complain to Coffey that he believed that he was being discriminated against or otherwise mistreated based on his age.

After the meeting, Coffey investigated Plaintiff's allegations. She contacted Plaintiff's manager, Aaron Mowry, and he gave her names of co-workers that she should interview in connection with Plaintiff's allegations. Coffey interviewed several of Plaintiff's co-workers and had two more conversations with Plaintiff regarding his allegations. Coffey then determined that Plaintiff's allegations could not be substantiated and that feedback regarding Plaintiff's performance was reasonable. She informed Mowry of her determinations.

### C. Mowry's Investigation

Mowry noticed on the weekly evaluations that there was consistent feedback that Plaintiff was unable to perform his job duties as a Sixth Hand without the help and the direction of co-workers. Thus, Mowry spoke with Plaintiff's co-workers and shift coordinators to obtain information about Plaintiff's performance. Mowry spoke with co-workers across different shifts and found that the feedback regarding Plaintiff's inability to perform his job duties without help was consistent across shifts.

*D. Plaintiff's Termination*

Mowry determined that Plaintiff had not demonstrated an ability to effectively and consistently perform his job responsibilities, and Mowry decided to terminate Plaintiff's employment prior to his completion of the 150-day probationary period. In making this determination, Mowry considered his own investigation of Plaintiff's performance, as well as the recommendations of Coffey[5] and Kelley.[6] ECF No. 17-2 ¶¶ 6-11. On May 1, 2012, Plaintiff was informed of this decision in a meeting with Kelley, Mowry, and Coffey.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 17-1, p. 309. Plaintiff alleged that he was discharged because of his race and his age. The EEOC issued a right-to-sue letter on September 14, 2012. ECF No. 1-1. Plaintiff then filed the present lawsuit, alleging that he was discharged because of his race in violation of Title VII and that comments about his age during the probationary period created a hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA"). GP asserts that it is entitled to summary judgment on both of Plaintiff's claims.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[5] Coffey recommended termination because, during her investigation, she found no basis for Plaintiff's refusal to sign his weekly performance evaluation and no basis for his allegation that he was being mistreated because of his race. Coffey also recommended termination because she found that there was a reasonable basis for the critical feedback of Plaintiff's performance. ECF No. 24-1, ¶ 8.

[6] Kelley recommended termination based on the fact that Plaintiff's co-workers had consistently provided feedback that Plaintiff could not perform his job duties without help and direction from others. ECF No. 17-6, ¶ 8.

Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

A. *Title VII Race Discrimination*

Plaintiff has not presented any direct evidence of race discrimination, so the Court will analyze his claims under the *McDonnell Douglas* burden-shifting framework. *Gibson v. Am.*

*Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012). Under this familiar framework, a plaintiff must first establish a prima facie case of discrimination. *Id*. To establish a prima facie case of race discrimination, a plaintiff must show that "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Id*. (citing *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir. 2010)). If the plaintiff successfully establishes a prima facie case, the defendant may rebut the prima facie case by articulating a non-discriminatory reason for its action. *Id*. The burden then shifts to the plaintiff to show that the defendant's proffered reason was merely pretext for discrimination. *Id*.

Plaintiff makes a Title VII race discrimination claim in his Complaint; however, Plaintiff has failed to brief this claim in his response to GP's summary judgment motion. Thus, the Court assumes that Plaintiff has abandoned his Title VII race discrimination claim. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."); *see also Allen v. Missouri*, No. 4:11-CV-2224-JAR, 2013 WL 2156259, at *12 (E.D. Mo. May 17, 2013) (construing plaintiff's failure to respond to defendant's motion regarding some of the claims as plaintiff's abandonment of those claims).

Regardless of whether Plaintiff has abandoned his race discrimination claim, Plaintiff has not established a prima facie case of discrimination because he has failed to show that he was discharged under circumstances permitting an inference of intentional discrimination. Plaintiff admits that he does not believe that Aaron Mowry (the decision-maker) discriminated based on Plaintiff's race:

> Q: Do you believe that [Aaron Mowry] . . . would discriminate against someone based on their race?
>
> A: My opinion, I don't think so, no.

ECF No. 17-1, p. 52; ECF No. 17-2, ¶ 6. Where a plaintiff admits that the decision-maker would not discriminate, as Plaintiff has done here, the plaintiff effectively waives an essential element of that claim—that the discrimination was intentional. *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 661 (11th Cir. 2012) (granting summary judgment where plaintiff responded "no" to the question of whether she felt like her termination had anything to do with her race); *Cardenas v. AT&T Corp.*, 245 F.3d 994, 1000 (8th Cir. 2001) (intentional discrimination is the ultimate question). Here, Plaintiff simply has offered no evidence of discriminatory intent.

Even if Plaintiff was successful in establishing a prima facie case, however, his race discrimination claim would still fail. If a prima facie case has been established, GP must then put forth a legitimate, non-discriminatory reason for Plaintiff's termination. In this case, GP asserts that Plaintiff was terminated because Mowry, Plaintiff's supervisor, determined that Plaintiff had not demonstrated an ability to effectively and consistently perform his job responsibilities. Thus, GP has met its burden of demonstrating a legitimate, nondiscriminatory reason for terminating Plaintiff. Plaintiff, on the other hand, offers no evidence showing that GP's reason for terminating him is a pretext for racial discrimination.

Plaintiff disagrees with the "needs improvement" ratings that he received, and he also questions GP's decision to terminate him. The Court, however, will not sit as a "super-personnel department[] to second-guess the business decisions of employers." *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998). When an employer articulates a reason for terminating a plaintiff, it is not for the Court to decide whether the reason was wise, fair, or even correct. *Id*. The relevant question is whether the stated reason was truly the reason for the

plaintiff's termination. *Id*. Here, Plaintiff disputes that he inadequately performed his job duties. Plaintiff, however, has not shown that Mowry did not honestly believe Plaintiff had failed to demonstrate the ability to effectively and consistently perform his job responsibilities. *See Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074-75 (8th Cir. 2006) (even assuming the underlying reason for the adverse action was false, the plaintiff failed in rebutting the proffered non-discriminatory reason because he presented no evidence from which to conclude the defendant knew or even suspected its falsity).

Because Plaintiff cannot establish a prima facie case or present evidence that poor job performance was a pretext for race discrimination, GP is entitled to summary judgment on Plaintiff's Title VII race discrimination claim.

### B.  ADEA Hostile Work Environment

In his Complaint, Plaintiff states that his supervisor "created an oppressive environment" by making comments about Plaintiff's age. ECF No. 1, ¶ 25. Plaintiff further states that his co-workers' frequent comments about his age created "a hostile and offensive work environment." ECF No. 1, ¶ 29. The Court and GP interpret this as Plaintiff's attempt to make an ADEA hostile work environment claim. However, by failing to brief his ADEA hostile work environment claim in his response to GP's summary judgment motion, Plaintiff abandons this claim just as he did his Title VII race discrimination claim. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."); *see also Allen v. Missouri*, No. 4:11-CV-2224-JAR, 2013 WL 2156259, at *12 (E.D. Mo. May 17, 2013) (construing plaintiff's failure to respond to defendant's motion regarding some of the claims as plaintiff's abandonment of those claims).

Regardless of whether Plaintiff has abandoned his hostile work environment claim, this claim is procedurally barred because he has not exhausted his administrative remedies. A plaintiff bringing a claim under the ADEA must exhaust his administrative remedies before bringing suit in federal court. *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005). That is, a claimant must first timely file an EEOC charge. 42 U.S.C. § 2000e-5(e). The charge must be "sufficiently precise to . . . describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). If the EEOC issues to the claimant a right-to-sue letter following its investigation, the charge limits the scope of the subsequent civil action because "the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006)* (quoting *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998)) (discussing exhaustion requirement under Title VII); *Parisi*, 400 F.3d at 585 (discussing exhaustion requirement under the ADEA).

Here, Plaintiff's EEOC charge makes no mention of a hostile work environment claim, ongoing discriminatory practices, or any other adverse employment actions other than his termination. In his EEOC charge, Plaintiff states specifically that the date the alleged discrimination took place was on May 1, 2012—the date of his termination. Plaintiff did not indicate that there was discrimination of an ongoing or continuing nature.

A plaintiff, however, "will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought." *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661, 672 (8th Cir. 2006). The Eighth Circuit does not require that subsequently-filed lawsuits mirror the underlying administrative charges, but it does not permit the sweep of a judicial complaint to go

beyond "the scope of the EEOC investigation which could reasonably be expected to grow out of the charge." *Wedow*, 442 F.3d at 674.  Here, the sweep of Plaintiff's complaint does just that.

> In the EEOC charge, Plaintiff describes his claim:
>
> I was hired on or about December 12, 2011, with my most recent position as that of Entry Level Utility.  On May 1, 2012, I was discharged.
>
> I was told I was discharged because of my performance.
>
> I believe I was discharged because of my race, Black in violation of Title VII of the Civil Rights Act of 1964, as amended, and because of my age, 55 in violation of the [ADEA.]"

ECF No. 17-1, p. 312.  Here, Plaintiff sets forth straightforward and limited allegations in his EEOC charge, and the Court finds that this charge would not lead the EEOC to investigate whether Plaintiff was subject to a hostile working environment during the course of his employment with GP.  Thus, the Court finds that Plaintiff has failed to exhaust his administrative remedies as to his hostile work environment claim, and this claim is dismissed.

### C.  *ADEA Discriminatory Discharge*

In his brief in opposition to GP's summary judgment motion, Plaintiff seems to argue that he was discharged based on his age and that GP should be held liable for this discharge under a "cat's paw" theory of liability.  Plaintiff's complaint, however, does not allege discriminatory discharge based on his age.  The heading in the Complaint for the race discrimination claim reads "Unlawful Discharge in Violation of Title VII," and Plaintiff clearly alleges that he was "unlawfully terminated because of his race." ECF No. 1, ¶ 19.  Plaintiff, however, makes no such allegation regarding his age.  Plaintiff's heading regarding his age discrimination claim reads "Age Discrimination in Violation of ADEA," and his complaint never mentions that he was unlawfully terminated because of his age.  Instead, the complaint references facts supporting a hostile work environment claim based on age.  GP even pointed out this deficiency in its brief

10

supporting its summary judgment motion, and Plaintiff did not attempt to address the issue in his response or brief in opposition to GP's summary judgment motion. Further, Plaintiff has not moved to amend his complaint to add a claim for discriminatory discharge based on his age. Accordingly, the Court finds that Plaintiff has not stated a cause of action for discriminatory discharge based on age.

Even if Plaintiff had stated this cause of action, Plaintiff's "cat's paw" theory of liability would fail. "Cat's paw" refers to a theory of liability in the employment discrimination context "in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory action." *Qamhiyah v. Iowa State Univ. of Science and Technology*, 566 F.3d 733, 742 (8th Cir. 2009). Here, Plaintiff seems to argue that Kelley[7] was the biased subordinate who recommended Plaintiff's termination and that Mowry was the duped decisionmaker. Mowry, however, states that he would have made the decision to terminate Plaintiff's employment regardless of Kelley's evaluations or recommendation. Mowry further states that his decision was based on the following: (1) his own investigation of the information that was contained in those evaluations; (2) his own personal observations of Plaintiff; and (3) the separate recommendation of Brenda Coffey, the Human Resources leader, who had performed her own investigation into feedback provided on Plaintiff's evaluations. ECF No. 17-2, ¶¶ 7-11; ECF No. 24-1, ¶¶ 7-8; ECF No. 22-6, ¶ 12. According to Mowry, he would not have terminated Plaintiff's employment without the recommendation of Coffey. ECF No. 17-2, ¶ 10. Based on this undisputed evidence, Plaintiff cannot establish that Mowry's termination of Plaintiff's employment was a mere conduit for the desires of Kelley. Thus, even if Plaintiff had alleged an ADEA discriminatory discharge claim, it would fail.

---

[7] According to Plaintiff, Kelley made frequent comments about Plaintiff's age hindering his ability to do his job.

11

CONCLUSION

For the reasons stated above, the Court finds that GP's Motion for Summary Judgment (ECF No. 16) should be and hereby is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. A Judgment of even date consistent with this Opinion shall issue.

IT IS SO ORDERED, on this 5th day of September, 2014.

　　　　　　　　　　　　　　　　　　　　　　/s/ Susan O. Hickey　　　　　
　　　　　　　　　　　　　　　　　　　　　　Susan O. Hickey
　　　　　　　　　　　　　　　　　　　　　　United States District Judge